UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re

BOULDER HEIGHTS OWNER, LLC,                           Chapter 11
                                                      Case No. 12-11958 (REG)

                        Debtor.
------------------------------------------------------------x

## NOTICE OF ENTRY OF ORDER CONFIRMING JOINT PLAN OF REORGANIZATION FOR BOULDER HEIGHTS OWNER, LLC

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      **Confirmation of the Plan.** By that certain order, dated June 25, 2013 [D.R. No. 44](the *"Confirmation Order"*), the United States Bankruptcy Court for the Southern District of New York (the *"Bankruptcy Court"*) confirmed the *Joint Plan of Reorganization For Boulder Heights Owner, LLC"*, dated January 10, 2013 [D.R. No. 21], as modified (the *"Plan"*). Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings set forth in the Plan.

2.      **Copies of the Plan and Confirmation Order.** The Plan and Confirmation Order are available for inspection during regular business hours in the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, NY 10004-1408.

3.      **Effect of the Occurrence of the Effective Date.** As of the Effective Date, the Plan, among other things, binds any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns; vests property of the Debtor's estate in the Liquidation Trust free and clear of all Claims, Liens, encumbrances, charges and other interests (except as otherwise provided in the Plan or Confirmation Order); and operates as an injunction with respect to certain actions.

Dated:  June 25, 2013

                                    Respectfully submitted,

                                    LAW OFFICES OF GABRIEL DEL VIRGINIA
                                    Gabriel Del Virginia, Esq.
                                    880 Third Avenue-13th Floor,
                                    New York, New York 10022
                                    Tel.: (212) 371-5478
                                    *Attorneys for Boulder Heights Owner, LLC*

                                    RIEMER & BRAUNSTEIN LLP
                                    Steven T. Greene, Esq.
                                    Steven E. Fox, Esq.
                                    Times Square Tower
                                    Seven Times Square, Suite 206
                                    New York, New York 10036
                                    Tel.: (212) 789-3100
                                    *Attorneys for Sovereign Bank, N.A.*

LAW OFFICES OF GABRIEL DEL VIRGINIA
Gabriel Del Virginia, Esq.
880 Third Avenue-13th Floor,
New York, New York 10022
Tel.: (212) 371-5478
*Attorneys for Debtor/Plan Proponent,*
*Boulder Heights Owner, LLC*

RIEMER & BRAUNSTEIN LLP
Steven T. Greene, Esq.
Steven E. Fox, Esq.
Times Square Tower
Seven Times Square, Suite 206
New York, New York 10036
Tel.: (212) 789-3100
*Attorneys for Plan Proponent,*
*Sovereign Bank, N.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re

BOULDER HEIGHTS OWNER, LLC,                    Chapter 11
                                               Case No. 12-11958 (REG)

                Debtor.
-----------------------------------------------------------x

### ORDER CONFIRMING JOINT PLAN OF
### REORGANIZATION FOR BOULDER HEIGHTS OWNER, LLC

**THIS CASE** came on for hearing on June 19, 2013 (the "Confirmation Hearing") to consider: (a)

confirmation of the "*[Proposed] Joint Plan of Reorganization*", dated January 10, 2013 [D.R. No. 21; (in

the form annexed hereto as Exhibit "1" and incorporated herein, the "Plan"], for Boulder Heights Owner,

LLC, debtor and debtor in possession (the "Debtor"), as filed by the Debtor sand Sovereign Bank, N.A. as

co-proponents thereof (each a "Plan Proponent" and collectively the "Plan Proponents"). Capitalized

terms used herein and not otherwise defined shall have the respective meanings ascribed to them in the

Plan.

In connection with the Confirmation of the Plan, the Court has considered the following matters submitted by the Plan Proponents in support of Confirmation of the Plan: (a) *Declaration Of Daniel Gordon In Support Of Confirmation Of The Joint Plan Of Reorganization For Boulder Heights Owner, LLC Pursuant To Chapter 11 Of The United States Bankruptcy Code* ("Confirmation Declaration") [D.R. No. 39]; (b) *Memorandum of Law In Support Of Confirmation Of The Joint Plan Of Reorganization For Boulder Heights Owner, LLC Under Chapter 11 Of The Bankruptcy Code*, dated June 15, 2013 (the "Confirmation Memorandum")[D.R. No. 41], and (c) *Declaration Certifying The Tabulation Of Ballots Accepting Or Rejecting The Joint Plan Of Reorganization*, dated June 10, 2013 (the "Ballot Tabulation") [D.R. No. 38].

On May 8, 2013, the Court entered its "*Order (A) Approving Joint Disclosure Statement; (B) Establishing Treatment Of Claims For Notice And Voting Purposes; (C) Establishing Deadline And Procedures For Temporary Allowance Of Claims For Voting Purposes; (D) Approving Solicitation Package And Procedures For Distribution; (E) Approving Form Of Ballot; (F) Establishing Voting Deadline And Procedures For Tabulation Of Votes; (G) Scheduling Confirmation Hearing To Consider Confirmation Of Plan; (H) Approving Form And Manner Of Notice Of Confirmation Hearing And Procedures For Filing Objections To Confirmation; And (I) Granting Related Relief*" (the "DS Approval Order") [D.R. No. 34]. As evidenced by the Certificate of Service on file with the Clerk of the Court [D.R. No. 35], the Disclosure Statement, the Plan, the DS Approval Order, a notice of the date, time and place of the Confirmation Hearing, and a Ballot were each distributed to creditors and parties-in-interest on May 13, 2013.

The Court, having considered the Disclosure Statement, the Plan, the Confirmation Declaration, the Confirmation Memorandum, the Ballot Tabulation, and the *Trustee's Reservation of Rights with Respect to Her Claims Against Allstar Capital, Inc.*, filed June 6, 2013 [D.R. No. 36]; the documentary and testimonial evidence presented at the Confirmation Hearing and the documents and materials attached hereto, and the arguments of all counsel present at the Confirmation Hearing, makes

- 2 -

the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052(a), made applicable to this matter pursuant to Bankruptcy Rule 9016.

## I.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.    Commencement of Chapter 11 Case**

1.    This Chapter 11 case (the "Chapter 11 Case") was commenced by the Debtor on May 9, 2012 by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Clerk of this Court.

2.    Since the Petition Date, the Debtor has continued throughout this case to operate as a debtor in possession.

3.    No trustee, examiner, or official unsecured creditors' committee has been appointed in the Chapter 11 Case.

**B.    Jurisdiction and Venue**

4.    The Court has jurisdiction to conduct the Confirmation Hearing and to confirm the Plan pursuant to 28 U.S.C. § 1334.

5.    Confirmation of the Plan is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(L), and this Court has jurisdiction to issue and enter a Final Order with respect thereto.

**C.    Transmittal/Service of Plan Documents; Adequacy of Notice**

6.    Timely and proper notice of the Confirmation Hearing and of the time fixed for filing objections to Confirmation and for submitting Ballots to the Voting Agent indicating either an acceptance or rejection of the Plan was given to all creditors and parties in interest in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules of this Court, and Orders of this Court, including, without limitation, the DS Approval Order.

7.    The notice provided was due, adequate, and sufficient to notify all appropriate creditors and parties in interest of the Confirmation Hearing, the dates fixed to file objections and to submit Ballots, and other deadlines. The notice also complied in all respects with the DS Approval Order, the

Bankruptcy Code, the Bankruptcy Rules (including, without limitation, Fed.R.Bankr.P. 2002, 3018, 3019, and 9006), and the Local Rules of this Court, and otherwise satisfied the requirements of due process.

**D.    Judicial Notice of Record**

8.    In connection with Confirmation of the Plan, the Court takes judicial notice of the record in this Chapter 11 Case, including, without limitation, the Disclosure Statement, the Plan, all pleadings and other papers filed, all Orders entered by this Court, and all testimony proffered, all other evidence adduced, and all arguments made at the Confirmation Hearing held before the Court and during the pendency of this Chapter 11 Case. Together with the information contained in the Plan, and the Disclosure Statement, the testimony proffered and other evidence adduced at the Confirmation Hearing and during the course of the Chapter 11 Case –

        a)    are persuasive, credible, and accurate as of the dates such information and evidence were prepared, presented, and/or proffered;

        b)    have not been controverted by other persuasive evidence and have not been challenged; and

        c)    are based upon reasonable and sound assumptions.

**E.    Solicitation**

9.    In accordance with Section 1126(b) of the Bankruptcy Code, the solicitation of votes to accept or reject the Plan complied with all applicable law, rules, and regulations governing the adequacy of disclosure in connection with such solicitation. Solicitation was conducted after disclosure of "adequate information," as such term is defined in Section 1125(a) of the Bankruptcy Code.

**F.    Balloting**

10.    The Plan Proponents have solicited the votes and tabulated the Ballots in respect of the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, and the DS Approval Order.

11.    Except as otherwise noted in the Ballot Tabulation, the Plan was voted on by all Classes of Impaired Claims and Equity Interests that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the DS Approval Order.

12.     The Ballot Tabulation validly and correctly sets forth the tabulation of votes on the Plan, as required by the Bankruptcy Code, Bankruptcy Rules, Local Rules of this Court, and the DS Approval Order.

13.     As set forth in the Ballot Tabulation, the following Classes of Claims and Equity Interests voted to accept the Plan: Class 1, and Class 3.

14.     As set forth in the Ballot Tabulation, as of the Ballot Date the following Classes of Claims and Equity Interests failed to vote to either accept or reject the Plan: Classes 2, 4, 5 and 6. As a result, and in accordance with the DS Approval Order, each of Class 2, 4, 5 and 6 are deemed to have abstained with regard to the Plan, and therefore, in accordance with Section 1126 of the Bankruptcy Code, each of Classes 2, 4, 5 and 6 are deemed to have rejected the Plan.

15.     As set forth in the Ballot Tabulation, the Plan has been accepted in writing by the requisite majorities of Classes 1 and 3, each of which is an "impaired" class of claims.  The Plan Proponents have sought "cramdown" with respect to Classes 2, 4, 5 and 6 in accordance with Article VIII of the Plan and Section 1129(b) of the Bankruptcy Code.

**H.     Benefit to Creditors**

16.     The Plan, the statements of counsel, and the entire record of this Chapter 11 Case reveal that the transactions contemplated by the Plan (including the Plan Modifications) will provide significant benefits to creditors and will provide for payments to be made on account of Allowed Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Secured Claims, and General Unsecured Claims.

**I.     Plan Compliance with Bankruptcy Code**

17.     The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by this Court in connection with this Chapter 11 Case. The Plan Proponents have therefore satisfied Section 1129(a)(1) of the Bankruptcy Code.

18.     The Plan Proponents have properly solicited votes with respect to the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as

well as the DS Approval Order. The Plan Proponents have therefore satisfied Section 1129(a)(2) of the Bankruptcy Code.

**J.    Compliance with Sections 1122 and 1123**

19.    The Plan satisfies all of the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the co-proponents of the Plan.

20.    In accordance with Section 1122(a) of the Bankruptcy Code, the Plan classifies each Claim against and Equity Interest in the Debtor in a manner such that the other claims in each such class(es) are substantially similar to the other Claims or Equity Interests in such class(es). The Plan, therefore, satisfies Section 1122(a) of the Bankruptcy Code.

21.    The Plan adequately and properly classifies all Claims and Equity Interests required to be classified, and, accordingly, satisfies Section 1123(a)(l) of the Bankruptcy Code.

22.    All Classes of Claims are identified as either unimpaired or impaired. Accordingly, the Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

23.    The Plan specifies the treatment of each Impaired Class of Claims and Equity Interests. Accordingly, the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

24.    The Plan provides the same treatment for each Claim or Equity Interest in a particular Class unless the holder of such a Claim or Equity Interest agreed to less favorable treatment. Accordingly, the Plan satisfies Section 1123(a)(4) of the Bankruptcy Code.

25.    The Plan sets forth the means by which the Plan will be implemented. The Plan makes adequate means for its implementation, and accordingly satisfies Section 1123(a)(5) of the Bankruptcy Code.

26.    As and to the extent applicable, the Plan Proponents have disclosed the identity of the person who will manage the Debtor's affairs post-Confirmation. Accordingly, the Plan satisfies Section 1123(a)(7) of the Bankruptcy Code.

**K.    Executory Contracts and Leases**

27.    In the event any unexpired lease or executory contract is not designated by the Plan

Proponents (or its designee) as an assumed contract, then such unexpired lease or executory contract shall be deemed rejected as of 11:59 p.m. on the day immediately preceding the Effective Date. All parties to rejected contracts or leases shall have thirty (30) days from the Effective Date to file a rejection damages claim.

**L.    Plan Proposed in Good Faith**

28.    This Court has examined the totality of the circumstances surrounding the formulation of the Plan and finds that the Plan has been proposed in good faith by the Plan Proponents. The Plan Proponents have acted in good faith in formulating and proposing the Plan. The Plan Proponents have acted in good faith and received no unfair advantage. The primary purpose of the Plan is to provide the highest possible return to creditors. Accordingly, the Plan Proponents have satisfied Section 1129(a)(3) of the Bankruptcy Code.

29.    The Plan Proponents, their Representatives, equity holders, directors, officers, employees, attorneys, financial advisors, investment bankers and other professionals have acted in good faith in connection with the Plan, this Chapter 11 Case, and the formulation and consummation of the Plan, and accordingly, have satisfied Section1125(e) of the Bankruptcy Code.

**M.    Preservation of Causes of Action**

30.    Except as may be specifically set forth in the Plan and/or this Confirmation Order, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Chapter 11 Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Trust shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Chapter 11 Case as if the Chapter 11 Case had not been commenced.

**N.**     **Payments for Services**

31.     All payments to be made by the Plan Proponents to professionals retained by Order of the Court for services or for costs and expenses in or in connection with the Chapter 11 Case, through the Confirmation Date, have been or are subject to review and approval by this Court upon the pending, and any supplemental, applications filed under Sections 330, 331 or 503(b) of the Bankruptcy Code. Accordingly, the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code.

**O.**     **Directors and Officers**

32.     The Plan provides that Daniel Gordon, the Debtor's current manager, will continue to manage the Debtor's affairs post-Confirmation. As such, the requisite identifications have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtor and with public policy. Under these circumstances, the Plan satisfies Section 1129(a)(5) of the Bankruptcy Code.

**P.**     **Governmental Regulation of Rates**

33.     The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. Section 1129(a)(6) of the Bankruptcy Code therefore is not applicable.

**Q.**     **Best Interest of Creditors**

34.     The Plan is in essence a liquidating plan, under which the estate's interests in the Debtor's principal assets shall be sold to the highest and/or best bidder, following which the net proceeds of such sale shall be distributed to creditors consistent with the Plan. Each Holder of a Claim that is "impaired" within the meaning of Section 1124 of the Bankruptcy Code that has not accepted the Plan will therefore receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interests" test under Section 1129(a)(7)(A)(ii) of the Bankruptcy Code.

**R.**      **Acceptance; Deemed Rejection of the Plan by Certain Classes**

35.      The Plan satisfies Section 1129(a)(10) of the Bankruptcy Code because at least one Impaired Class has voted to accept the Plan by the requisite majority, determined without including any acceptance of the Plan by Insiders.

36.      Pursuant to the Ballot Tabulation, the following Classes of Claims and Equity Interests failed to vote on the Plan, and therefore are deemed to have rejected the Plan: Class 2, 4, 5 and 6. As a result, the Plan does not satisfy Section 1129(a)(8) with respect to Classes 2, 4, 5 and 6. Accordingly, the Plan Proponents seek Confirmation of the Plan pursuant to Section 1129(b)(2)(B) of the Bankruptcy Code with respect to each of the aforementioned Classes.

37.      The Plan provides that with respect to Claims and Equity Interests in Classes 2, 4, 5 and 6, the Holder of any such Claim(s) or Equity Interest(s) that are junior to Claims and/or Equity Interests in such Classes will not receive or retain any property under the Plan until such time as such Claims are paid in full. As a result, the provisions of Section 1129(b)(2)(B) are satisfied with respect to each such Class.

**T.**      **U.S. Trustee Fees**

38.      The Plan, as modified by the Plan Modifications, provides for the payment on the Effective Date (or as soon as practicable thereafter) of all fees and interest payable under Section 1930, Title 28, United States Code, and Section 3717, Title 31, United States Code, respectively. The Plan therefore satisfies Section 1129(a)(12) of the Bankruptcy Code.

**U.**      **Benefit Plans**

39.      The Plan does not attempt to alter retiree benefits, if any. As a result, Section 1129(a)(13) of the Bankruptcy Code has been satisfied by the Plan.

**V.**      **Purpose Not to Avoid Taxes or Securities Compliance**

40.      The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 and no governmental entity has objected to the confirmation of the Plan on any such grounds.

**W.**    **Feasibility**

41.    The information contained in the Plan and the Disclosure Statement, together with the testimony proffered and other evidence adduced at the Confirmation Hearing, including the Confirmation Declaration, establish that the Plan is feasible and that Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor. The Plan therefore satisfies Section 1129(a)(11) of the Bankruptcy Code.

**X.**    **Injunctions; Third Party Releases**

42.    Pursuant to Bankruptcy Rule 3016(c), both the Plan and Disclosure Statement have described in specific and conspicuous language all acts proposed to be enjoined and identified all entities subject to the injunction contained in the Plan.

43.    The Plan Proponents have acted in good faith and provided valuable consideration to the Debtor, the estate and creditors in order to effectuate and consummate the Plan and related transactions, in exchange for which the Plan Proponents are entitled to the exculpation, releases and other consideration provided for under the Plan (as modified by the Plan Modifications) and this Confirmation Order.

**Y.**    **Modifications of the Plan; Satisfaction of the Requirements of
Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019**

44.    At the Confirmation Hearing, the Plan Proponents agreed to make the following modifications to the Plan (each a "Plan Modification", and collectively the "Plan Modifications"):

a)    Section 16.17(a) of the Plan shall be deleted in its entirety and replaced with the following:

"(a)    In consideration of the Proponents' agreement to make available the Sovereign Carve-Out for the benefit of Holders of Allowed General Unsecured Claims, and except as otherwise provided by the Plan or the Confirmation Order, and limited in all respects by Section 1125(e) of the Bankruptcy Code, on the Effective Date the Proponents, and their respective officers, directors, employees, representatives, members, attorneys, financial advisors, successors or assigns shall be deemed released by each of them against the other, by the Debtor, and all holders of Claims or Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of this Chapter 11 case, including, without limiting the generality of the foregoing, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, except for acts or omissions that constitute willful misconduct or gross negligence."

- 10 -

  b) Section 16.19 of the Plan shall be deleted in its entirety and replaced with the following:

> "16.19 U.S. Trustee Fees and Interest to be Paid. All fees and interest payable pursuant to Section 1930, Title 28, United States Code and Section 3717, Title 31, United States Code, respectively, as determined by the Bankruptcy Court at the hearing on Confirmation of the Plan, shall be paid by the Debtor on or before the Effective Date."

45. Section 1127 of the Bankruptcy Code provides that the proponent of the plan may modify the plan at any time before confirmation if the plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. Bankruptcy Rule 3019 provides that, after a plan has been accepted and before its confirmation, the plan proponent may modify such plan.

46. Moreover, Section 1127(c) of the Bankruptcy Code requires the proponent of a modification to comply with Section 1125 of the Bankruptcy Code. Further disclosure and re-solicitation of votes on a modified plan is only required, however, when the modification materially *and* adversely affects parties who previously voted for the plan. *See, e.g., In re Federal-Mogul Global Inc.,* 2007 Bankr. LEXIS 3940, *113 (Bankr. D. Del. 2007) (additional disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor"); *see also Beal Bank, S.S.B. v. Jack's Marine, Inc., (In re Beal Bank, S.S.B.),* 201 B.R. 376, 380 n.4 (E.D. Pa. 1996); *In re Century Glove, Inc.,* 1993 U.S. Dist. LEXIS 2286, at *12 (D. Del. Feb. 10, 1993); *In re Am. Solar King Corp.,* 90 B.R. 808, 823-24 (Bankr. W.D. Tex. 1988); *see also In re Temple Zion,* 125 B.R. 910, 914 (Bantu. E.D. Pa. 1991).

47. The Plan Modifications do not adversely affect any Creditor or Equity Interest holder. As a result, no re-solicitation is required pursuant to Section 1125 of the Bankruptcy Code. Accordingly, the Plan, as modified by the Plan Modifications, complies with Section 1127(c) of the Bankruptcy Code.

48. As the Plan complies with Sections 1122 and 1123 of the Bankruptcy Code, the Plan complies with Section 1127(a) of the Bankruptcy Code.

**Z.**    **Other**

49.    The omission of any reference or specific discussion of all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect and enforceability of every other provision of the Plan. To the extent of any inconsistencies between the terms of this Confirmation Order and the Plan, the terms of this Confirmation Order shall control, except as otherwise provided herein.

**AA.**    **Modification of Confirmation Order**

50.    If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent Order of this Court or any other court of competent jurisdiction, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan prior to the Plan Proponents' receipt of written notice of any such order; nor shall such reversal, modification or vacation hereof affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification or vacation hereof, any such obligations incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacation shall be governed in all respects by the provisions hereof and of the Plan, and all documents, instruments and agreements related thereto, or any amendments or modifications thereto.

**BB.**    **Burden of Proof**

51.    The Plan Proponents have met their burden of proving all of the elements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), and Section 1129(b) of the Bankruptcy Code has been satisfied.

**CC.**    **Exemption From Transfer Taxes**

52.    Section 1146(a) of the Bankruptcy Code provides that the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of the Bankruptcy Code may not be taxed under any law imposing a stamp or similar tax.

53.    Section 1146(a) of the Bankruptcy Code applies to the issuance, transfer, or exchange of

- 12 -

notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without express or implied limitation, any sale, transfer, conveyance and/or assignment of the Hotel Property made pursuant to the Plan.

54.     Any purchaser of the Groton Property, to the extent such purchaser is unaffiliated with the Debtor, shall not be deemed to (i) be the successor of the Debtor by reason of any theory at law or in equity, (ii) except as specifically set forth herein, in the Plan, or in any purchase agreement and any other agreements entered into in connection therewith, assume, incur or be responsible for any Claims or Liabilities of the Debtor or any of its affiliates, (iii) have, de facto or otherwise, merged with or into the Debtor, or (iv) be a mere or substantial continuation of the Debtor or the enterprise of the Debtor. No purchaser shall assume or have any liability or obligation for any Claim against the Debtor except for those liabilities specifically assumed by such purchaser pursuant to the terms of a purchase agreement entered into with the Trust.

For the foregoing reasons, the Court determines that the Plan, including the Plan Modifications, should be confirmed. Accordingly, it is hereby

## II.

## ORDERED, ADJUDGED AND DECREED

1.     The Plan is in all respects confirmed, pursuant to Section 1129 of the Bankruptcy Code, and all of its terms and provisions are approved.

2.     In accordance with Section 1127 of the Bankruptcy Code, the Plan Modifications are hereby approved in all respects, and the Plan shall be, and the same hereby is modified and amended thereby.

3.     Each term and provision of the Plan, as the same has been modified by the Plan Modifications, and further as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

4.      To the extent that such contracts are not terminated prior to the Effective Date of the Plan, all executory contracts and unexpired leases are deemed rejected as provided for in the Plan. Parties to such rejected leases and contracts are required to file a proof of claim with the Bankruptcy Court for rejection damages, if any, pursuant to the provisions of Section 502(g) of the Bankruptcy Code, within thirty (30) days from the entry of this Confirmation Order or such Claim shall be forever barred.

5.      Upon the satisfaction and/or waiver of the conditions set forth in Sections 14.3 of the Plan, the Plan shall become effective.

6.      The Plan Proponents shall comply with all obligations, terms and conditions of the Plan.

7.      In accordance with Section 1141(b) and (c) of the Bankruptcy Code and the Plan, title to the Debtor's assets shall vest on the Effective Date as provide in the Plan, free and clear of all liens, claims, and interests of creditors, equity security holders, members and of general partners in the Debtor. Until the Effective Date, the Debtor shall continue to perform its duties under the Bankruptcy Code.

8.      In accordance with Section 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order are binding on the Plan Proponents, the Debtor, each Creditor, and every other party-in-interest in this case and each of their respective successors and assigns (whether or not such Creditors or parties-in-interest voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such Holder has filed, or is deemed to have filed, a proof of Claim or proof of Equity Interest), and any other Person giving, acquiring, or receiving property under the Plan, and any lessor or lessee of property to or from the Debtor. The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, known or unknown, including, except as expressly provided in the Plan, interest accrued on or expenses incurred in connection with such Claims from and after the Petition Date, against the Debtor or its property or interests in property.

9.      The Plan Proponents and any designee, its respective Representatives, equity holders, directors, officers, employees, attorneys, financial advisors, investment bankers and other professionals

- 14 -

have acted in good faith in connection with the Plan, this Chapter 11 Case, and the formulation and consummation of the Plan, and accordingly, has satisfied Section 1125(e) of the Bankruptcy Code.

10.    The Plan Proponents are hereby authorized and directed to execute any necessary documents to meet the statutory requirements, if any, for filing necessary papers with the State of New York or any other jurisdiction to effectuate the terms of the Plan. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan, and (b) is and shall he binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.

11.    Payment of all Allowed Claims of professionals for fees and/or expenses, as provided herein, shall be paid on the date on which any Order authorizing the payment of such fees and/or expenses to such professional becomes a Final Order, unless other provisions have been made between the professional and the Plan Proponents.

12.    Subject to any applicable limitations contained in the Plan, the Plan Proponents shall have one hundred and twenty days (120) from the Effective Date to commence any claims objections ("Objection Deadline"). The Plan Proponents, upon motion and a hearing, may request the entry of an order of this Court extending the Objection Deadline.

13.    Pursuant to Section 1146(a) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or securities under the Plan; the creation of any mortgage, deed of trust, or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the sale of the Groton Property in accordance with the terms of the Plan, shall not be subject to

- 15 -

any stamp, real estate transfer, documentary, registration, sales, added-value, mortgage release, mortgage recording, or similar tax.

14.    All entities holding Claims against or Equity Interests in the Debtor that are treated under the Plan are hereby directed to execute, deliver, file, or record any document, and to take any action necessary to implement, consummate, and otherwise effect the Plan in accordance with their respective terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

15.    In accordance with Section 1142 of the Bankruptcy Code, the Plan Proponents and any other entity designated pursuant to the Plan, are hereby authorized, empowered, and directed to issue, execute, deliver, file, and record any document, and to take any action necessary or appropriate to implement, consummate, and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed, and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan.

16.    The Plan Proponents are hereby authorized, upon subsequent Order of the Court, to amend or modify the Plan at any time prior to substantial consummation, but only in accordance with Section 1127 of the Bankruptcy Code and the Plan.

17.    Except as otherwise provided in the Plan, the Plan Proponents shall cause to be paid to the U.S. Trustee the fees and interest, if any, imposed pursuant to 28 U.S.C. Section 1930(a)(6) and 31 U.S.C. 3717 for post-Confirmation periods within the time period set forth in 28 U.S.C. Section 1930(a)(6).

18.    Until this Chapter 11 Case is closed through the entry of a Final Decree, the Court shall retain jurisdiction pursuant to Bankruptcy Rule 3020(d) to ensure that the provisions and the intent of the Plan are carried out. The Court shall also retain jurisdiction to:

a)    To fix allowances of compensation;

b)    To resolve any dispute regarding the sale of the Property, including, but not limited to, any distribution of proceeds or Net Proceeds from the sale of the Property (whether by

private sale or auction as provided in the Plan), including, without limitation, to resolve any dispute about whether a particular cost is a cost of sale of the Property;

      c)      To resolve any dispute regarding any distribution of the Remainder;

      d)      To conduct the auction contemplated by Article VII of the Plan;

      e)      To determine any and all proceedings to set aside liens or encumbrances, and to recover any preferences, transfers, assets or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

      f)      To hear and determine (a) all applications for rejection or termination of executory contract(s) filed prior to the Confirmation Date, and (b) all Claims arising from the rejection of any executory contracts, and to consummate the rejection and termination thereof;

      g)      To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any rents, proceeds or profits thereof and to set aside and/or determine the extent and priority of liens or encumbrances.

      h)      To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken during the pendency of the Chapter 11 Case or the Marketing Period, including, without limitation, those effected by the confirmation of the Plan;

      i)      The Bankruptcy Court shall have exclusive jurisdiction to determine all questions and disputes regarding title to the Debtor's assets, and determination of all causes of action, controversies, and disputes or conflicts, whether or not subject to actions pending as of the Confirmation Date, between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code;

      j)      To recover assets wherever located, or judgments by reason of preferences, transfers of assets or damages to which the Debtor may be entitled under applicable law;

      k)      To correct of any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to implement the purposes and intent of the Plan;

      l)      To enforce and interpret the terms and conditions of the Plan and to determine all controversies and disputes arising under or in connection with the Plan or any settlement agreement annexed hereto;

      m)      To modify the Plan subsequent to the Confirmation Date, pursuant to the Bankruptcy Code and Rules;

      n)      To adjudicate and determine any cause of action provided for under the Plan or the Confirmation Order including, without limitation, and any and all claims under § 505 of the Bankruptcy Code;

      o)      To determine such other matters as may be set forth in the Confirmation Order or for which relief may be granted under the Bankruptcy Code or Bankruptcy Rules;

- 17 -

     p)     To enter any order, including injunctions, necessary to enforce title, rights and power of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem appropriate;

     q)     To hear any matter brought on by proper application by a Claimant or holder of an Interest claiming that payments or distributions pursuant to the Plan have not been properly made, in terms of the amount, timing, or otherwise;

     r)     To make such other orders as are necessary or appropriate to implement the provisions of the Plan;

     s)     To compel the execution of any document required or necessarily implied by the terms or the confirmation of the Plan;

     t)     To enter a Final Order closing the Chapter 11 Case; and

     u)     To implement the provisions of the Plan in the manner provided under §§ 1142(a) and (b) of the Bankruptcy Code.

19.    This Confirmation Order shall be deemed to constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or other governmental authority, whether foreign or domestic, or judicial or administrative body, whether foreign or domestic, with respect to the implementation or consummation of the Plan.

20.    Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Plan Proponents prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan including all documents, instruments and agreements related thereto.

21.    The failure to specifically include any particular provision of the Plan in this Confirmation Order or any further order of the Court contemplated by this Confirmation Order will not

- 18 -

diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan, this Confirmation Order, and any further order of the Court contemplated by this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is any inconsistency between the provisions of the Plan and the documents entered into by the Plan Proponents pursuant thereto and this Confirmation Order, or any further order of the Court contemplated by this Confirmation Order, the terms and conditions contained in this Confirmation Order or such further order of the Court shall govern and shall be deemed a modification to the Plan and shall control and take precedence.  The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of the Court.

22.    Notwithstanding Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062 or otherwise, the Confirmation Order shall take effect on at 12:01 a.m. (ET) on the date that this Order is entered on the official docket of this Court.

23.    Within five (5) days after the entry of this Confirmation Order, the Plan Proponent shall mail to all known Creditors and Holders of Interests and all other parties-in-interest (including professionals) a notice informing such parties of the entry of this Confirmation Order, which notice shall be substantially in the form annexed hereto as Exhibit "2" and incorporated herein.

Dated:  June _25_, 2013

*s/ Robert E. Gerber*
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT "1"

TO

ORDER CONFIRMING JOINT PLAN OF
REORGANIZATION FOR BOULDER HEIGHTS OWNER, LLC

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re

**BOULDER HEIGHTS OWNER, LLC,**                    Chapter 11
                                                  Case No. 12-11958 (REG)

          **Debtor.**

-------------------------------------------------------------x

### [PROPOSED] JOINT PLAN OF REORGANIZATION

SUBMITTED BY:

LAW OFFICES OF GABRIEL DEL VIRGINIA
880 Third Avenue-13th Floor,
New York, New York 10022.
Tel.: (212) 371-5478

*Attorneys for Debtor/Plan Proponent,*
*Boulder Heights Owner, LLC*

RIEMER & BRAUNSTEIN LLP
Steven T. Greene, Esq.
Steven E. Fox, Esq.
Times Square Tower
Seven Times Square, Suite 206
New York, New York 10036
Tel.: (212) 789-3100

*Attorneys for Plan Proponent,*
*Sovereign Bank, N.A.*

Dated:  January 10, 2013

## INTRODUCTION

Boulder Heights Owner, LLC  ("Debtor") and Sovereign Bank, N.A. ("Sovereign") (Debtor and Sovereign are collectively called the "Proponents") propose the following plan of reorganization for the Debtor, pursuant to the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 et seq.

Reference is made to the Disclosure Statement (the "Disclosure Statement") relating to this Plan as approved by the Order of the United States Bankruptcy Court for the Southern District of New York. The Disclosure Statement contains information relative to the Debtor, its history and background, business operations and the assets of its Estate. The Disclosure Statement also summarizes and contains a discussion of the terms and conditions of this Plan.

Pursuant to § 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from a holder of a "Claim" (as defined below) until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to the "Claimants" (as defined below).  All Claimants are encouraged to read this Plan and the Disclosure Statement in their entirety prior to voting to accept or reject this Plan. Under Section 1125(f) of the Bankruptcy Code, the Court has determined that this Plan contains adequate information for the creditors to accept or reject the Plan and so no separate disclosure statement shall accompany this Plan.

*Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code and the restrictions on modifications set forth in this Plan, the Proponents expressly reserve their right to alter, amend or modify this Plan, one or more times, prior to its Substantial Consummation (as defined below).*

## ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION AND CONSTRUCTION

1.1    Definitions. For purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth:

1.1.1    "Administrative Claim" or "Administrative Expense" means a claim for costs and expenses of administration allowed under §§ 503(b), 507(a)(1) or 507(b) of the Bankruptcy Code.

3

1.1.2 "Allowed Amount" or "Allow", means, with respect to a particular Claim, (a) the dollar amount of a Claim that is listed in the Debtor's Schedules, as they may from time to time be amended in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), as not disputed, contingent or unliquidated, if the Claimant of such Claim has not filed a proof of claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules, or (b) if the Claimant has filed a proof of claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to Rule 3003(c) of the Bankruptcy Rules or if a proof of claim for such Claimant is deemed filed under applicable law or by reason of an order of the Bankruptcy Court within such applicable period of limitation: (i) the dollar amount stated in such proof of claim, if no objection to such proof of claim has been interposed by a party in interest within the applicable period of limitations fixed by the Bankruptcy Code or applicable Bankruptcy Rules, or as otherwise fixed by the Bankruptcy Court, or (ii) such dollar amount as shall be fixed by an order of the Bankruptcy Court which has become a Final Order, if an objection has been interposed by a party in interest within the applicable period of limitations fixed by the Bankruptcy Code, applicable Bankruptcy Rules, or the Bankruptcy Court or, pending the determination of such objection, the dollar amount of such Claim, if any, which would be Allowed in the relevant Class if such pending objection were to be granted in full by the Bankruptcy Court, or (c) with respect to the allowance of fees and expenses pursuant to Section 330, 331, 503(b) of the Bankruptcy Code, such amount as shall be fixed by an order of the Bankruptcy Court which has become a Final Order.  To the extent required by applicable law, the Allowed Amount of each Secured Claim shall include interest that has accrued thereon from the Petition Date through and including the Effective Date, but interest accrued prior to, or from the Petition Date through and including the Effective Date shall not be included in the Allowed Amount of any other pre-Petition Date Claim or Interest.

1.1.3 "Allowed Claim" means a Claim against the Debtor for which an Allowed Amount has been determined.  Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim.

1.1.4 "Allowed Interest" means all of the interests in the Debtor.

1.1.5 "Allstar" means Allstar Capital, Inc., a Nevada corporation.

1.1.6 "Allstar/Sovereign Actions" means collectively the following pending actions:

a) *Sovereign Bank v. Michael J. Thomas, et al.* (Case KNL-CV08-5006932-S) filed in the Connecticut Court;

b) *Allstar Capital, Inc. v. Liberty Investors, LLC, et al.* (Case KNL-CV08-5008595-S) filed in the Connecticut Court;

c) *Sovereign Bank v. Michael J. Thomas, et al* (Case KNL-CV11-6008886-S) filed in the Connecticut Court;

d) Notice of Appeal in Case KNL-CV08-5006932-S) filed in the Connecticut Court; and

e) Notice of Appeal in Case KNL-CV08-5008595-S filed in the Connecticut Court.

1.1.7 "Allstar/Sovereign Settlement Agreement" means that certain settlement agreement, dated January 10, 2013, between and among Allstar and Sovereign.

1.1.8 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 et seq., Title 11, United States Code.

1.1.9 "Bankruptcy Court" means that unit of the United States District Court for the Southern District of New York consisting of those Bankruptcy Judges in regular active service in such District.

1.1.10 "Business Day" means any day except Saturday, Sunday and any other day on which the Office of the Clerk of the Bankruptcy Court is closed.

1.1.11 "Cash" means cash, cash equivalents and readily marketable securities and instruments including, without limitation, lawful currency and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank on commercial paper.

1.1.12 "Chapter 11 Case" means the entire pending proceeding commenced by the Debtor's petition for reorganization filed under Chapter 11 of the Bankruptcy Code and styled In re Boulder Heights Owner, LLC, and bearing case number 12-11958-reg.

1.1.13    "Claim" means (a) a right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.1.14    "Claimant" means the holder of a Claim.

1.1.15    "Class" means a category of holders of Claims or Interests which are substantially similar to the other Claims or Interests in such Class, as classified pursuant to this Plan.

1.1.16    "Class 5 Distribution Reserve" means that certain set aside from the Net Proceeds of the sale of the Property on or immediately after the Closing in the aggregate amount of $25,000.

1.1.17    "Closing Date" means the date that the Property is transferred to a party pursuant to the terms of this Plan.

1.1.18    "Confirmation Date" means the day on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.1.19    "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.1.20    "Connecticut Court" means the Superior Court of the State of Connecticut.

1.1.21    "Debtor" means Boulder Heights Owner, LLC, a limited liability company organized under the laws of the State of Connecticut.

1.1.22    "Disclosure Statement" means the written document relating to this Plan filed pursuant to § 1125 of the Bankruptcy Code in connection with the Chapter 11 Case and approved by the Bankruptcy Court as containing "adequate information" (as the term is defined in § 1125(a)(1) of the Bankruptcy Code), as the same may be amended or modified and approved by the Bankruptcy Court, including any exhibits and schedules annexed thereto and any documents delivered in connection therewith.

6

1.1.23 "Disputed Claim or Interest" means any Claim or Interest or portion thereof, the allowance of which has not yet been determined, and with respect to which an objection shall have been interposed by the Debtor or any other party in interest on a timely basis, viz., prior to the Confirmation Date or such other date as may be fixed by order of the Bankruptcy Court.

1.1.24 "Disputed Claims or Interests Reserve" shall have the meaning set forth in § 8.3 hereof.

1.1.25 "Effective Date" means the fifteenth (15th) day following the Confirmation Date (but if such day is not a Business Day, then the first Business Day following the fifteenth (15th) day), provided that no order staying confirmation or consummation of this Plan has been entered prior thereto which is still in effect on such date. If an order staying consummation or confirmation of this Plan has been entered, then Effective Date shall mean the earlier of the fifteenth (15th) Business Day following the date upon which (a) the Confirmation Order has become a Final Order, or (b) any stay of consummation of this Plan is no longer effective, provided that such latter date is more than fifteen (15) days.

1.1.26 "Estate" means the estate of the Debtor created by § 541 of the Bankruptcy Code.

1.1.27 "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which is not the subject of an appeal, or (ii) which shall not have been reversed, stayed, modified or amended, or (iii) from which the time to appeal, seek review, certiorari or rehearing of such order shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules.

1.1.23 "Impaired" means the legal, equitable and contractual alteration of one's rights to which a Claim or Interest attaches, or failure to cure any contractual default and reinstate the maturity of such Claim or Interest prior to default and compensate for any damages incurred as a result of the default.

1.1.24 "Net Proceeds" of the sale of the Property means the sale price of the Property *less* the amount of all costs of sale, Administrative Claims, Priority Tax Claims, Priority Claims, and the Class ___ Distribution Reserve provided for under this Plan.

1.1.25 "Property" means all of the Debtor's and its estate's real estate in Groton, Connecticut.

1.1.26 "Petition Date" means May 9, 2012.

7

1.1.27  "Plan" means this plan of reorganization and any amendment hereto or modification hereof.

1.1.28  "Priority Tax Claims" means all Claims against the Debtor entitled to priority under Section 507(a)(8) of the Bankruptcy Code, to the extent that such Claims are not Secured Claims.

1.1.29  "Professional Person" means any person retained or to be compensated pursuant to §§ 327, 328, 330 and 503(b) of the Bankruptcy Code.

1.1.30  "Reorganized Debtor" means the Debtor after the confirmation of this Plan, with the assets as provided for in this Plan, and subject only to the claims, interests and encumbrances provided for in this Plan.

1.1.31  "Schedules" means (i) the schedules of assets and liabilities, current income and expenditures, and executory contracts and unexpired leases and (ii) the statement of financial affairs, which were filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Rule 1007(b).

1.1.32  "Secured Claim" means a Claim against the Debtor which is secured by a lien, charge, pledge, encumbrance or other security interest on property of the Debtor's Estate or which is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Claim in such property or to the extent of the amount subject to setoff, as the case may be, as determined either by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code or by agreement between the Debtor and such Claimant.

1.1.33  "Sovereign Bank" means Sovereign Bank, N.A.

1.1.34  "Substantial Consummation of this Plan" (or similar phrase) shall have the meaning set forth in § 1101(2) of the Bankruptcy Code.

1.1.35  "Tax Lien" means a claim arising from a tax which is or has become a Secured Claim.

1.1.36  "Tort Claim" means a Claim against the Debtor which is not a Secured Claim, an Unsecured Claim, a Priority Claim, an Administrative Claim, or a Priority Tax Claim, and which is founded in tort.

8

1.1.37   "Unsecured Claim" shall mean a Claim which is not secured, including any Claim listed as such in the Schedules (whether or not such Claim might be otherwise considered an Interest), or any Claim held by a trade creditor and any Claim for damages held by a party to a contract that is or has been rejected by the Debtor, but does not include Secured Claims, Administrative Claims, Priority Tax Claims, Priority Claims, Tort Claims or an Interest in the Debtor.  Any Interest or Claim listed as an Unsecured Claim in the Schedules, other than Tort Claims, shall be treated as such for purposes of this Plan.

1.2   Rules of Construction. For purposes of this Plan, the following rules of interpretation and construction shall apply:

1.2.1   All other terms used herein which are defined in the Bankruptcy Code or the Bankruptcy Rules but are not otherwise defined herein shall have the meanings ascribed to them in the Bankruptcy Code or the Bankruptcy Rules.

1.2.2 For purposes of this Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in this Plan to sections, articles and exhibits are references to sections, articles, and exhibits of or to this Plan; (e) the words "hereof," "hereto," "herein," "hereunder" and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) the term "or" as used herein shall not be construed as exclusive unless the context clearly requires otherwise; and (h) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply.

1.2.3   All exhibits and Schedules to this Plan are incorporated herein by reference and made a part hereof as if set forth in full herein.

1.2.4   In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.2.5   Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut, without giving effect to the principles of conflict of laws thereof.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY CLAIMS

2.1   Administrative Expenses. The Holders of Allowed Administrative Claims shall be paid in such amounts as are agreed by the Proponents or allowed by the Bankruptcy Court, and shall be paid in cash and in the full amount of the Allowed Administrative Expense, or other payments as agreed upon by the Proponents and any particular Administrative Claimant. The distribution to holders of Administrative Claims shall occur on the Effective Date of this Plan, or when an Order allowing such expense becomes a Final Order, whichever is later, unless other terms of payment are agreed upon between the holder of such Administrative Expense and the Proponents.  Holders of Administrative Claims are not classified pursuant to § 1123(a)(1) and therefore have no right to accept or reject the Plan.

The Proponents anticipate that the total unpaid Administrative Expense claims asserted against the Estate on the estimated date of Confirmation shall consist of Debtor's attorneys' fees and the statutory fees due and owing to the United States Trustee. This estimate and the items it comprises as detailed below are merely for working purposes only in aid of projecting payments under the Plan. The estimates are subject to adjustment in accordance with the determination of Allowed Administrative Claims

actually incurred and allowed, and any interim payments that may be allowed and disbursed. The Proponents reserve the right to object to any such claims. The actual Administrative Expenses may be lower or higher in both itemized and total amount. The estimated Administrative Expenses the Proponents anticipate being asserted are approximately $25,000.

The post-confirmation Debtor, without need of further approval of the Bankruptcy Court, shall pay fees and expenses of Professional Persons incurred in aid of execution of this Plan after Confirmation. In addition the Debtor shall pay, as funds become available, quarterly fees due the Office of the United States Trustee until a decree is entered closing this case.

2.2     Priority Tax Claims. Priority Tax Claims, if any, will be paid within five (5) years from the Petition Date, or in Cash on the Closing Date, in the discretion of the Proponents, as those alternatives are allowed under Section 1129(a)(9) of the Bankruptcy Code.

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

3.1  The following is a designation of the Classes of Claims and Interests under this Plan. In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims described in Article II of this Plan, have not been classified and are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied in whole or in part, as the case may be, before the Effective Date.

3.1.1    **Class 1:  Town of Groton Secured Tax Claim**. Class 1 shall consist of the Allowed secured tax claims held by the Town of Groton, Connecticut, comprising all outstanding real property taxes that were last payable without penalty prior to the Petition Date, plus interest thereon to the Petition Date at the rate allowed by applicable state statute.

3.1.2    **Class 2:  Allstar Capital Secured Claim**.  Class 2 shall consist of the Allowed Secured Claim of Allstar Capital, Inc.

3.1.3    **Class 3:  Sovereign Bank Secured Claim**. Class 3 shall consist of the Allowed Secured Claim of Sovereign Bank.

3.1.4    **Class 4:  Allowed Priority Claims**.  Class 4 consists of Allowed Priority Claims.

3.1.5    **Class 5:  Allowed Unsecured Claims**. Class 5 shall consist of Allowed Unsecured Claims.

3.1.6    **Class 6: Allowed Interests**.  Class 6 shall consist of the Allowed Interests in the Debtor.

Any holder of a Claim or Interest in Classes 1 through 6 who fails to object in writing to the classifications provided in this Plan by filing said objection with the Bankruptcy Court, with service upon the Proponent's counsel by the date set for objections to this Plan, shall be deemed to have accepted such classification and to be bound thereby.

### ARTICLE IV

### IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES

Classes 1, 2, 3, 4, 5 and 6 are Impaired under this Plan.

### ARTICLE V

### TREATMENT OF IMPAIRED CLASSES
### OF CLAIMS AND INTERESTS

5.1    **Generally**.  Unless otherwise expressly provided in the Plan, the treatment of and consideration to be received by holders of Allowed Claims or Allowed Interests pursuant to this Article V and the Plan generally shall be in full satisfaction, settlement, release, and extinguishment of their respective Claims against or Interests in the Debtor and the Debtor's estate.

5.2    **Class 1 Claim.** The Class 1 Claim is impaired under this Plan. The holder of the Allowed Class 1 Claim shall be paid in full on the Closing Date, inclusive of interest at the rate provided by applicable state statute.

5.3    **Class 2 Claim.** The Class 2 Secured Claim is impaired. The Class 2 Secured Claim shall be an Allowed Claim in the aggregate amount of $6,546,364.00.

On the Closing Date, or as soon thereafter as may be practicable, the holder of the Allowed Class 2 Secured Claim shall be paid an amount equal to 75% of the Net Proceeds realized upon a sale of the Property, without interest, as provided in the Allstar/Sovereign Settlement Agreement.

5.4    **Class 3 Claim.** The Class 3 Secured Claim is impaired. The Class 3 Secured Claim shall be an Allowed Claim in the aggregate amount of $8,157,636.02.

On the Closing Date, or as soon thereafter as may be practicable, the holder of the Allowed Class 3 Secured Claim shall be paid an amount equal to 25% of the Net Proceeds realized upon a sale of the Property, without interest, as provided in the Allstar/Sovereign Settlement Agreement.

5.5    **Class 4 Claim.** Class 4 Claims are impaired. The holders of Allowed Class 4 Claims shall be paid in full on the Closing Date, inclusive of interest at the rate provided by applicable state statute.

5.6    **Class 5 Claim.** Class 5 Claims are impaired. The holders of Allowed Unsecured Claims will receive their pro rata share of the Class 5 Distribution Reserve, without interest, as soon as practicable after the Closing Date.

5.6    **Class 6 Interests.** Class 6 Interests are impaired. As soon as practical following the Closing Date, all membership Interests in the Debtor will be cancelled. Holders of Class 6 Interests shall not receive or retain any distribution under this Plan.

## ARTICLE VI

## RIGHT OF PRE-PAYMENT

The Proponents shall have the absolute right of pre-payment of any financial obligations pursuant to this Plan, in whole or in part, without penalty.

13

**ARTICLE VII**

**MEANS FOR EXECUTION AND
IMPLEMENTATION OF THIS PLAN**

A.    <u>The Property</u>

7.1    <u>The Transfer</u>.  This Plan contemplates that following the occurrence of the Effective Date, the Debtor, with the consent of and following consultation with Sovereign Bank, will market the Property for sale, which marketing efforts will ultimately result in the Property being sold to the highest bidder, either by private sale or through an open bid auction, as provided hereinbelow.

7.2    <u>The Sales Process</u>.

a.    <u>Corporate Action</u>.  The entry of the Confirmation Order shall constitute authorization for the Debtor to take or to cause to be taken all limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including, without limitation, the execution and delivery of any documents or instruments of transfer necessary, appropriate or incident to the sale, transfer, conveyance and assignment of the Property in accordance with the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders, members, managers or directors of the Debtor. On the Effective Date, the Debtor is authorized to execute and deliver the agreements, documents and instruments contemplated by the Plan in the name and on behalf of the Debtor.

b.    <u>Marketing of the Property</u>.  The Debtor will, in consultation with Sovereign and Allstar, market the Property for sale for a period of up to twelve (12) months after the Effective Date (the "Marketing Period") and have the discretion to set a list price, make counter-offers, and take any and all other actions that an owner of property ordinarily takes in the effort to sell real estate. The Debtor will retain a real estate broker for purposes of marketing the Property for sale, the selection of which shall be subject to the prior written approval of Sovereign and Allstar.  The retention of any professional to assist

14

Debtor in the marketing of the Property, including, without limitation, attorneys, auctioneers and real estate brokers, shall not require notice to or approval by the Bankruptcy Court. At least twenty-one (21) days prior to the date of closing any proposed sale by the Debtor (the "Closing Date"), the Debtor shall mail by first class mail postage prepaid a notice to all known creditors of its intended sale that includes the name of the proposed purchaser, the proposed purchase price, and outlines the salient terms and conditions of the proposed sale. Any sale of the Property that is consummated by the Debtor shall be deemed a sale in contemplation of this Plan and approved by the Bankruptcy Court, including for the purpose of Section 1146(a) of the Bankruptcy Code.

During the Marketing Period, the Debtor shall consult with Sovereign and Allstar about all matters affecting, whether directly or indirectly, the marketing and/or sale of the Property. In addition, following consultation with Sovereign and Allstar, the Debtor may obtain permits for the Property to aid its marketability and/or enhance its marketability. The Debtor shall communicate all offers to purchase the Property to Sovereign and Allstar.

c.    Acceptance of Purchase Offer. If the Debtor agrees to accept a proposed purchase contract for the purchase and sale of the Property, then the Debtor shall file a motion with the Bankruptcy Court for approval of such sale to the proposed purchaser. Upon approval of the proposed sale by the Bankruptcy Court, the Debtor shall proceed with the sale pursuant to the proposed sale contract. If the Debtor obtains a cash sale price of more than $2 million, then Sovereign's consent will not be required to proceed with the proposed purchase contact.

d.    Failure to Sell During the Marketing Period. If the Debtor does not sell the Property during the Marketing Period, then not later than sixty (60) days after the end of the Marketing Period, the Debtor shall engage an auctioneer to sell the property at public auction for the highest price (without reserve) and shall conduct such auction within ninety (90) days after the end of the Marketing Period. The Debtor shall consult with Sovereign and Allstar as to the selection and retention of any such auctioneer, who shall be reasonably acceptable to Sovereign and Allstar. In conjunction with any such auction, each of Allstar and Sovereign shall retain their respective rights to bid for and acquire the

Property through a "credit bid" in accordance with applicable provisions of the Bankruptcy Code; provided, however, in the case of any such credit bid, (x) it shall be in an amount not less than $1,000,000, and (y) if the credit bid is determined to be the highest and best offer for the Property, the winning credit bidder shall pay to Allstar or Sovereign Bank, as the case may be, an amount equal to its proportionate share of the net sale proceeds as if the winning bid was an all-cash bid, which payment shall be in full settlement and satisfaction of any recovery rights of such party under this Plan. Following the conduct of the auction and determination of the highest and best offer at such auction, the Debtor shall file a motion with the Bankruptcy Court for approval of such sale to the proposed purchaser. Upon approval of the proposed sale by the Bankruptcy Court, the Debtor shall proceed with the sale pursuant to the proposed sale contract. Any auction sale that is consummated by the Debtor shall be deemed a sale in contemplation of this Plan and shall be deemed approved by the Bankruptcy Court, including for the purpose of Section 1146(a) of the Bankruptcy Code.

   7.3 Closing of a Sale of the Property. On the Closing Date, the Property shall be transferred to the purchaser free and clear of all claims, encumbrances and other interests, other than as expressly provided for herein or in orders subsequent to the confirmation of the Plan and not inconsistent with the Plan. At Closing, the Debtor shall satisfy all liens which attach after the Confirmation Date, subject to Sovereign's and Allstar's approval. The Debtor shall take all actions necessary and appropriate to effectuate said transfer, and the Debtor is granted the authority to sign all necessary documents.

   7.4 Allocation and Payment of Property Sale Proceeds. Upon a sale of the Property during the Marketing Period, all actual, reasonable and necessary costs of such sale shall be paid from the proceeds of such sale. Following deduction and payment of costs of sale, the remaining proceeds of the sale shall be paid first to the holders of Allowed Administrative Claims, second to the holders of Priority Tax Claims and Priority Claims, and third to the holder of the Allowed Class 1 Secured Claim, until each such claim has been paid in full in Cash. The next remaining sale proceeds shall be utilized to fund the Class 4 Distribution Reserve any remaining Net Proceeds of the sale shall then be allocated and

distributed to the holders of the Class 2 Secured Claim and Class 3 Secured Claim, respectively, as provided in this Plan.

**ARTICLE VIII**

**<u>CRAMDOWN</u>**

In the event that any Impaired Class shall fail to accept this Plan in accordance with § 1129(a) of the Bankruptcy Code, the Proponents reserve the right to request the Bankruptcy Court to confirm this Plan in accordance with § 1129(b) of the Bankruptcy Code or amend this Plan pursuant to the terms set forth herein.

**ARTICLE IX**

**<u>RESOLUTION OF DISPUTED CLAIMS AND INTERESTS AND RESERVES</u>**

9.1    An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by any party in interest at any time prior to the Confirmation Date. The Proponents reserve the right to make further objections to any asserted Administrative Expenses, Claims or Interests on or prior to Substantial Consummation of this Plan.

9.2    A Proof of Claim may be amended only as agreed upon by the Proponents and the holder of such Claim (or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules) in the period between the approval of the Disclosure Statement and the hearing on the confirmation of this Plan, and may not be amended under any circumstances after the commencement of the hearing on the confirmation of this Plan.

9.3    No portion of the Remainder may be paid to any Claim holder if there is a Claim subject to dispute. In such instance, the Debtor shall retain the Remainder until resolution of any and all such disputes by a Final Order.

9.4    The Debtor will pay all Claims entitled to a portion of the Remainder within twenty-one days of its receipt of all or some portion of the Remainder.

9.5   Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall be in an amount equal to a rounding of such fraction to the nearest whole cent (rounding down in case of fractions of 0.5 or less).

9.6   Upon final distribution of all amounts required to be paid under this Plan, all Claims against the Debtor shall be deemed fully and finally satisfied, settled, released and discharged, with prejudice.

## ARTICLE X

### PROVISIONS FOR THE ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND LEASES

Any and all executory contracts and leases except those which shall, prior to the Confirmation Date, have been assumed or which shall be the subject of pending motions to assume, shall be rejected upon the entry of the Confirmation Date.

If the rejection of an executory contract or unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or its properties unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Proponents by the later of thirty (30) days after the Effective Date or thirty (30) days after entry of an Order allowing rejection of such contract or lease.

## ARTICLE XI

### PROVISIONS FOR MODIFICATION OF THIS PLAN

The Proponents may propose amendments or modifications of this Plan at any time prior to the Confirmation Date with leave of the Bankruptcy Court.  Subsequent to the Confirmation Date, the Proponents may, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of Claimants or holders of Interests, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.  The foregoing provisions of this Article X do

not limit the ability of the Proponents to modify this Plan under § 1127 of the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE XII

## LITIGATION

Upon the occurrence of the Effective Date, the Allstar/Sovereign Actions shall be deemed fully and finally settled in all respects in accordance with the terms of that certain Allstar/Sovereign Settlement Agreement and the distributions and other terms of this Plan. As promptly as practical following the Effective Date, Allstar and Sovereign shall jointly move the court having jurisdiction over the Allstar/Sovereign Actions for dismissal thereof, with prejudice. This Plan constitutes a motion by the Debtor, Allstar and Sovereign for approval of the compromise and settlement of the Allstar/Sovereign Actions under the Allstar/Sovereign Settlement Agreement and this Plan.

Except as may otherwise be provided in any settlement agreement annexed hereto, if any, all litigation in which the Debtor is a plaintiff or defendant, and all contested matters in which the Debtor is a movant, shall be shall immediately terminate and be dismissed or withdrawn.

## ARTICLE XIII
## CLOSING OF THE CASE

As soon as practicable after the Effective Date, the Chapter 11 Case shall be closed. To close the Chapter 11 Case, the Proponents, or one or more of them, shall file an application for final decree showing that the Chapter 11 Case has been substantially administered and that there has been Substantial Consummation of this Plan. The Bankruptcy Court may conduct a hearing thereon if requested by any Claimant, holder of an Interest, or any persons specially requesting same, subsequent to which an order approving the Proponents' report and closing the Chapter 11 Case shall be entered.

## ARTICLE XIV
## CONDITIONS TO EFFECTIVENESS OF PLAN

14.1    Acceptance by Impaired Classes. Pursuant to Section 1126(c) of the Bankruptcy Code, an impaired Class of Claims shall have accepted the Plan if: (a) the holders of at least two-thirds (2/3) in

dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any holder designated pursuant to Section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the holders of such Allowed Claims actually voting in such Class (other than Claims held by any holder designated pursuant to Section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan.

14.2    Voting Classes.  Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 14.2, the holders of Claims in Classes 1, 2, 3, 4 and 5 shall be entitled to vote to accept or reject the Plan. Administrative Claims and Priority Tax Claims are unimpaired and not classified under the Plan and hence are not entitled to vote to accept or reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Class 6 Interests shall not receive or retain any property or distribution under the Plan. As a result, Class 6 is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code, and therefore is not entitled to vote on the Plan.

14.3    Conditions to Effective Date.  The Plan shall not become effective unless and until each of the following conditions has been satisfied:

(a)    the Bankruptcy Court shall have issued and entered an order approving the Allstar/Sovereign Settlement Agreement;

(b)    The Bankruptcy Court shall have entered the Confirmation Order; and

(c)    The Confirmation Order shall have become a Final Order.

14.4    Waiver of Conditions.  The Proponents, in their sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Section 13.1(b) above. The failure of the Proponents to satisfy or waive such condition may be asserted by the Proponents regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The Proponents reserve the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

14.5    Effect of Failure of Condition.  In the event that the condition specified in Section 13.1(b) of the Plan has not occurred or been waived on or before ninety (90) days after the Confirmation Date, the Confirmation Order may be vacated upon Order of the Court after motion made by the Proponents.

ARTICLE XV

RETENTION OF JURISDICTION

15.1    In addition to the continued jurisdiction of the Bankruptcy Court subsequent to the Confirmation Date which is provided for as a matter of law by the Bankruptcy Code and Bankruptcy Rules, the Bankruptcy Court shall retain jurisdiction for the following purposes:

15.2    To fix allowances of compensation;

15.3    To resolve any dispute regarding the sale of the Property, including, but not limited to, any distribution of proceeds or Net Proceeds from the sale of the Property (whether by private sale or auction as provided in this Plan), including, without limitation, to resolve any dispute about whether a particular cost is a cost of sale of the Property;

15.4    To resolve any dispute regarding any distribution of the Remainder;

15.5    To conduct the auction contemplated by Article VII of this Plan;

15.6    To determine any and all proceedings to set aside liens or encumbrances, and to recover any preferences, transfers, assets or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

15.7    To hear and determine (a) all applications for rejection or termination of executory contract(s) filed prior to the Confirmation Date, and (b) all Claims arising from the rejection of any executory contracts, and to consummate the rejection and termination thereof;

15.8    To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any rents, proceeds or profits thereof and to set aside and/or determine the extent and priority of liens or encumbrances.

15.9    To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken during the pendency of the Chapter 11 Case or the Marketing Period, including, without limitation, those effected by the confirmation of this Plan;

15.10    The Bankruptcy Court shall have exclusive jurisdiction to determine all questions and disputes regarding title to the Debtor's assets, and determination of all causes of action, controversies, and disputes or conflicts, whether or not subject to actions pending as of the Confirmation Date, between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code;

15.11    To recover assets wherever located, or judgments by reason of preferences, transfers of assets or damages to which the Debtor may be entitled under applicable law;

15.12    To correct of any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to implement the purposes and intent of this Plan;

15.13    To enforce and interpret the terms and conditions of this Plan and to determine all controversies and disputes arising under or in connection with this Plan or any settlement agreement annexed hereto;

15.14    To modify this Plan subsequent to the Confirmation Date, pursuant to the Bankruptcy Code and Rules;

15.15    To adjudicate and determine any cause of action provided for under this Plan or the Confirmation Order including, without limitation, and any and all claims under § 505 of the Bankruptcy Code;

15.16    To determine such other matters as may be set forth in the Confirmation Order or for which relief may be granted under the Bankruptcy Code or Bankruptcy Rules;

15.17    To enter any order, including injunctions, necessary to enforce title, rights and power of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Bankruptcy Court may deem appropriate;

15.18    To hear any matter brought on by proper application by a Claimant or holder of an Interest claiming that payments or distributions pursuant to this Plan have not been properly made, in terms of the amount, timing, or otherwise;

15.19    To make such other orders as are necessary or appropriate to implement the provisions of this Plan;

15.20    To compel the execution of any document required or necessarily implied by the terms or the confirmation of this Plan;

15.21    To enter a Final Order closing the Chapter 11 Case; and

15.22    To implement the provisions of this Plan in the manner provided under §§ 1142(a) and (b) of the Bankruptcy Code.

## ARTICLE XVI

## MISCELLANEOUS AND ADDITIONAL PROVISIONS

16.1    If any payment or act under this Plan shall be required to be made or performed on a date which shall be a Saturday, Sunday or legal holiday, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

16.2    If any payment required under this Plan shall be made by mail, such payment shall be deemed to have been paid on the day when such payment shall have been mailed.

16.3    Any notice required to be provided under this Plan to the Debtor shall be made in writing and addressed to Boulder Heights Owner, LLC, 445 Park Avenue, 9th Floor, New York, New York 10022, Attn: Daniel Gordon. Any Notice to Sovereign Bank shall be in writing and addressed c/o Steven T. Greene, Esq. and Steven E. Fox, Esq., Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036.

16.4    Except as may otherwise be agreed to by the Proponents and the holder of a particular Claim or Interest any property or notice to which a Claimant or holder of an Interest shall become entitled to receive under the provisions of this Plan, shall be delivered by regular mail, postage prepaid. Property

23

or notice delivered in accordance with this subparagraph shall be deemed to have been delivered to the holder of such Claim or Interest regardless of whether such property or notice shall have been actually received by such Claimant or holder of an Interest.

16.5    Any party may change the address to which notices are to be sent to it by giving notice to such other party in the manner set forth herein, and notices shall be deemed received on the fifth business day subsequent to mailing.

16.6    Unless the holder of a Claim or Interest advises the Proponents and its attorneys in writing of a change of address, all distributions or notices shall be sent to the Claimant or holder of an Interest at his or its address as stated in the Schedules or as stated in a properly filed proof of claim or Interest.  The Proponents and its professionals shall have no obligation to locate the holder of a Claim or Interest whose distribution or notice is properly mailed, but nevertheless returned.  Any distribution that shall be returned because of the inability to locate such holder shall be treated as an unclaimed distribution.  In the event that any distribution of property remains unclaimed for a period of 180 days (or if said 180th day shall not be a Business Day, then the next business day subsequent to said 180th day) subsequent to it having been delivered to the holder entitled thereto, such unclaimed distribution shall, on the 181st day (or if said 181st day shall not be a Business Day, then the next business day subsequent to it having been delivered to the holder entitled thereto, be deemed forfeited by such holder.

16.7    In all references herein to any person, including, but not limited to, any parties, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

16.8    The section headings contained in this Plan are for convenience of reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

16.9    On or prior to the Closing Date, to the extent necessary and appropriate, the Debtor shall execute such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

16.10    Except to the extent that the Bankruptcy Code shall be applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut.

16.11    If any provision of this Plan shall be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

16.12    The Debtor and/or the Proponents, as the case may be, may, but shall not be required, to, set off against any Claim or Interest and the distributions made or to be made pursuant to this Plan in respect of such Claim or Interest, claims of any nature whatsoever that the Debtor's Estate may have against the holder of such Claim or Interest, but neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtor's Estate of any Claim that the Debtor's Estate may have against the holder of such Claim or Interest.

16.13    In computing any period of time prescribed or allowed by this Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included, unless it shall be a Saturday, a Sunday, or a legal holiday, in which event the period shall run until the end of the next business succeeding day.

16.14    This Plan and all of its provisions shall be binding upon and inure to the benefit of the Debtor, Claimants, all other parties in interest, and their respective successors, assigns, heirs and distributees.

16.15    Discharge. The terms of the Plan, including, without limitation, the treatment accorded Claims under the Plan, shall result in the Debtor not being entitled to a discharge in accordance with the applicable provisions of Section 1141 of the Bankruptcy Code.

16.16    Reversion of Property.

    (a)    Pursuant to Section 1141(b) of the Bankruptcy Code, Confirmation of the Plan vests all of the property of the estate in the Debtor except as otherwise dealt with in this Plan.

(b)      Pursuant to Section 1141(c) of the Bankruptcy Code, on the Effective Date, the property dealt with by the Plan shall become free and clear of all liens, claims, encumbrances, and interests of creditors, except as otherwise provided for in the Plan or the Confirmation Order.

16.17   Exculpation.

(a)      Except as otherwise provided by the Plan or the Confirmation Order, and in consideration of the Proponents' agreement to make available the Sovereign Carve-Out for the benefit of Holders of Allowed General Unsecured Claims, on the Effective Date, the Proponents, and their respective officers, directors, employees, representatives, members, attorneys, financial advisors, successors or assigns shall be deemed released by each of them against the other, by the Debtor, and all holders of Claims or Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of this Chapter 11 case, including, without limiting the generality of the foregoing, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that constitute willful misconduct or gross negligence, and all such persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code. As of the Effective Date, none of the Proponents and their respective representatives (but solely in their capacities as such) shall have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Petition Date in connection with, or arising out of this Chapter 11 case, the formulation, dissemination, Confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 case, the Plan, the Disclosure Statement, or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing shall not affect the liability of any person that would otherwise result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, fraud or criminal that causes damages.

(b)      <u>Governmental Agency Exclusion</u>.  Notwithstanding any other term or provision of this Plan to the contrary, nothing in the Confirmation Order or this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the released parties, nor shall anything in the Confirmation Order or this Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the released parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the released parties.

16.19    <u>Section 1930 Fees to be Paid</u>.  All fees payable pursuant to Section 1930 of Title 28, United States Bankruptcy Code, as determined by the Bankruptcy Court at the hearing on Confirmation of the Plan, shall be paid by the Debtor on or before the Effective Date.

16.20    <u>Post-Confirmation Actions</u>.  Subject in all respects to any contrary provisions of this Plan, nothing herein contained shall prevent the Debtor from taking such action as may be necessary to enforce any rights or prosecute any cause of action existing on behalf of the Debtor which may not have been heretofore enforced or prosecuted.

16.21    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed in accordance with the laws of the State of Connecticut.

16.22    <u>Non-Voting Equity Securities</u>.  To the extent applicable, the Debtor shall comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.

16.22    <u>Retiree Benefits</u>.    From and after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, the Debtor shall continue to pay all retiree benefits (as defined in Section 1114 of the Bankruptcy Code), if any, established or maintained by the Debtor prior to the Effective Date.  The Proponents believe there are no such benefits.

## ARTICLE XVI

## CONFIRMATION REQUEST

The Plan Proponents hereby requests confirmation of the Plan pursuant to Section 1129(a) and (b) of the Bankruptcy Code.

Dated:  January 10, 2013

BOULDER HEIGHTS OWNER, LLC

By:    */s/ Daniel Gordon*
      Name:  Daniel Gordon
      Its:     Manager

SOVEREIGN BANK, N.A.

By:    */s/ Martin M. Murphy*
      Name:  Martin M. Murphy
      Its:     Vice President

28

COUNSEL TO THE DEBTOR:
Gabriel Del Virginia, Esq.
Law Offices of Gabriel Del Virginia
488 Madison Avenue, 19th Flr.
New York, New York 10022
Tel:     (212) 371-5478
Email:  Gabriel.delvirginia@verizon.net

COUNSEL TO SOVEREIGN BANK
Steven Fox, Esq.
Riemer & Braunstein LLP
Times Square Tower
7 Times Square
New York, New York 10036
Tel:     (212) 789-3150
Email:  sfox@riemerlaw.com

1575596.1

**EXHIBIT "2"**

**TO**

**ORDER CONFIRMING JOINT PLAN OF**
**REORGANIZATION FOR BOULDER HEIGHTS OWNER, LLC**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re

BOULDER HEIGHTS OWNER, LLC,                              Chapter 11
                                                        Case No. 12-11958 (REG)

                    Debtor.
-------------------------------------------------------------x

## NOTICE OF ENTRY OF ORDER CONFIRMING JOINT PLAN OF
## REORGANIZATION FOR BOULDER HEIGHTS OWNER, LLC

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    **Confirmation of the Plan.** By that certain order, dated June __, 2013 (the *"Confirmation Order"*), the United States Bankruptcy Court for the Southern District of New York (the *"Bankruptcy Court"*) confirmed the *Joint Plan of Reorganization For Boulder Heights Owner, LLC"*, dated January 10, 2013 [D.R. No. 21], as modified (the *"Plan"*). Unless otherwise defined in this notice, capitalized terms and phrases used herein have the meanings set forth in the Plan.

2.    **Copies of the Plan and Confirmation Order.** The Plan and Confirmation Order are available for inspection during regular business hours in the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, NY 10004-1408.

3.    **Effect of the Occurrence of the Effective Date.** As of the Effective Date, the Plan, among other things, binds any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns; vests property of the Debtor's estate in the Liquidation Trust free and clear of all Claims, Liens, encumbrances, charges and other interests (except as otherwise provided in the Plan or Confirmation Order); and operates as an injunction with respect to certain actions.

Dated: _____ __, 2013

                                        Respectfully submitted,

                                        LAW OFFICES OF GABRIEL DEL VIRGINIA
                                        Gabriel Del Virginia, Esq.
                                        880 Third Avenue-13th Floor,
                                        New York, New York 10022
                                        Tel.: (212) 371-5478
                                        *Attorneys for Boulder Heights Owner, LLC*

                                        RIEMER & BRAUNSTEIN LLP
                                        Steven T. Greene, Esq.
                                        Steven E. Fox, Esq.
                                        Times Square Tower
                                        Seven Times Square, Suite 206
                                        New York, New York 10036
                                        Tel.: (212) 789-3100
                                        *Attorneys for Sovereign Bank, N.A.*